UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sandy Hill Apartments,                                     Civil No. 05-2327 (PAM/JSM)

          Plaintiff,

v.
                                      **MEMORANDUM AND ORDER**

Kossiwa Kudawoo,

          Defendant.

---

This matter is before the Court on Plaintiff Sandy Hill Apartments's Motion for Summary Judgment on Defendant Kossiwa Kudawoo's Counterclaims. For the reasons that follow, the Motion is granted.

**BACKGROUND**

Sandy Hill Apartments ("Sandy Hill") owns an apartment building in Saint Paul, Minnesota. In June 2004, Kossiwa Kudawoo ("Kudawoo") and her boyfriend, Chima Ochiagha, leased Unit No. 9 from Sandy Hill. Kudawoo and Ochiagha are both African-American. In October 2004, Ochiagha leased another apartment, Unit No. 13, for use as an office. Kudawoo's mother came for a visit in October 2004. She stayed with Kudawoo in Unit No. 9, and Ochiagha split his time between the two units. Sandy Hill's property manager, Michael McDonough, recalled that Ochiagha said he was moving full-time into Unit No. 13 because he and Kudawoo were not getting along and Kudawoo's mother did not like him.

On January 29, 2005, McDonough received a complaint from a tenant, Jeffrey Reed, about screaming and yelling coming from Unit No. 13.  Reed said it sounded like someone was being beaten.  McDonough went to the unit and heard Kudawoo screaming inside.  McDonough knocked, and Ochiagha opened the door.  McDonough saw that the apartment was "broken up" and that Ochiagha was bleeding. (McDonough Dep. at 99.)  Ochiagha said that Kudawoo had broken into his apartment and assaulted him.  He also said he had already called the police.

Later that evening, McDonough approached Kudawoo as she sat outside her apartment.  McDonough told her that she would be evicted because Sandy Hill did not tolerate tenants who screamed at and physically assaulted other tenants.  Kudawoo recalls that McDonough also made a race-related comment, but McDonough denies making any such statement.[1]  After the incident, Ochiagha went to his neighbors' apartment to apologize for Kudawoo's behavior.  He told the neighbors that Kudawoo had blocked his door and

---

[1] When asked in her deposition about any other instances of discrimination, Kudawoo testified that McDonough "had the habit of barging in any time he wanted to for something non-existent. He said neighbors were complaining about smelling from our apartment in the hall, so he came in, I was at work. And he talked to my mother." (Kudawoo Dep. at 54.) She also testified that McDonough complained about her cooking African food because it "smells bad." (Id. at 55.) Other evidence shows that McDonough spoke to Kudawoo about her cooking because of burned food and black smoke coming from her apartment. (Id. at 89.) Kudawoo also testified that McDonough wanted to run a background check on her mother because he believed older women from Africa bring drugs into the United States. (Id. at 56.) Finally, Kudawoo recalled that there were other noisy tenants who were not evicted. (E.g., id. at 90.)

thrown things at him, including a cup which cut his hand. The neighbors helped Ochiagha bandage his hand.

The next day, McDonough gave Kudawoo written notice that she had thirty days to vacate the premises. Kudawoo moved out on February 25, 2005. Ochiagha also vacated the apartment and moved into Unit No. 13. McDonough completed a Multihousing Credit Control Renter Performance Report, which is standard procedure when a tenant is evicted, stating that Kudawoo was evicted for harassing another tenant. The form also indicated that Kudawoo failed to pay rent after the eviction.

On March 8, 2005, Sandy Hill notified Kudawoo and Ochiagha in a letter that the rent for Unit No. 9 was past due, and even though Kudawoo had been evicted, she was responsible for the rent until the unit was re-rented. Sandy Hill sent a similar letter on March 28, 2005. On July 19, 2005, Sandy Hill notified Defendant that she had forfeited her damage deposit, and that the deposit would be applied to the amount owed.

Sandy Hill commenced this action against Kudawoo in state court to recover unpaid rent.[2] Kudawoo counterclaimed and removed the case to federal court. Her most recent Amended Answer and Counterclaim[3] asserts the following federal and state causes of action: violations of equal protection and due process rights; violations of the Fair Housing Act; civil rights violations under 42 U.S.C. §§ 1981 and 1983; breach of warranty of habitability under

---

[2] On September 5, 2006, Sandy Hill voluntarily dismissed its case against Kudawoo.

[3] The document is mistakenly captioned as a Second Amended Complaint. (Docket No. 12.)

Minn. Stat. § 504B.161; violation of her right to seek emergency and police assistance under Minn. Stat. § 504B.205; violation of her right to privacy as a residential tenant under Minn. Stat. § 504B.211; failure to return her security deposit under Minn. Stat. § 504B.178; and failure to comply with the eviction requirements set forth in Minn. Stat. § 504B.321.

**DISCUSSION**

**A.   Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to Kudawoo as the non-moving party. See Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.      Equal Protection and Due Process Claims**

Kudawoo brings her equal protection and due process claims under the Fifth and Fourteenth Amendments. The due process clause of the Fifth Amendment applies to federal government action, not to private actors. See Warren v. Gov't Nat'l Mortg. Ass'n, 611 F.2d 1229, 1232 (8th Cir. 1980). The Fourteenth Amendment also requires a state actor to have caused the constitutional deprivation at issue. Rendell-Baker v. Kohn, 457 U.S. 830, 837 (1982). Sandy Hill is a private apartment building to which the Fifth and Fourteenth Amendments do not apply. Accordingly, the Court grants summary judgment to Sandy Hill on these claims.

**C.      Statutory Civil Rights Claims**

Kudawoo alleges a violation of 42 U.S.C. § 1983. However, Sandy Hill is a private actor, and Kudawoo has no proof that Sandy Hill acted under the color of law. See Am. Mfrs. Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). Summary judgment is therefore granted to Sandy Hill on this claim.

Kudawoo also alleges a violation of 42 U.S.C. § 1981, which protects the right of all individuals to "make and enforce contracts" without respect to race. See Domino's Pizza, Inc. v. McDonald, 126 S. Ct. 1246, 1249 (2006). Kudawoo claims that Sandy Hill intentionally evicted her because of her race, as part of a plan to increase segregation in Saint Paul. The parties agree that the Court should examine this claim under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Maxfield v. Cintas Corp. No. 2, 427 F.3d 544, 550 (8th Cir. 2005). Under this framework, Kudawoo must first

establish a prima facie case. See id. Specifically, she must present evidence that she was in a protected class and that she was treated differently than similarly situated non-members of the class. See Darst-Webbe Tenant Ass'n Bd. v. St. Louis Hous. Auth., 299 F. Supp. 2d 952, 958 (E.D. Mo. 2004), aff'd, 417 F.3d 898 (8th Cir. 2005). After Kudawoo satisfies this burden, Sandy Hill must state a legitimate, nondiscriminatory reason for the action. Id. Kudawoo then must offer evidence showing that the reason is merely a pretext for discrimination. Id. To show pretext, Kudawoo must show both that the reason was false and that discriminatory intent was behind the true reason. See Maxfield, 427 F.3d at 550-51 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)); Dirden v. Dep't of Hous. & Urban Dev., 86 F.3d 112, 114 (8th Cir. 1996).

In the case at hand, summary judgment is appropriate because Kudawoo cannot make a prima facie case of racial discrimination under § 1981. In particular, she has no evidence that she was treated differently than similarly situated persons of other races. A "similarly situated" individual is one who was "involved in or accused of the same or similar conduct" but was treated differently. Tenge v. Phillips Modern Ag Co., 446 F.3d 903, 910 (8th Cir. 2006); see also Ali v. Stetson Univ., Inc., 340 F. Supp. 2d 1320, 1326-27 (M.D. Fla. 2004). Kudawoo was evicted because she screamed at and assaulted another tenant, causing that tenant to call the police. There are no other tenants who engaged in this type of behavior but who were not evicted. To the extent Kudawoo seeks to compare herself with Ochiagha, he

is also African-American. Summary judgment is granted to Sandy Hill on the § 1981 claim because Kudawoo has not established a prima facie case of discrimination.[4]

**D.   Fair Housing Claims**

Kudawoo sues under three provisions of the Fair Housing Act: 42 U.S.C. §§ 3601, 3604, and 3617. The Court grants summary judgment to Sandy Hill on the claim brought under § 3601 because that section does not afford a cause of action. Section 3601 reads in its entirety: "It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. This provision is simply a declaration of congressional intent.

Section 3604 of the Fair Housing Act prohibits discrimination in the sale or rental of housing. 42 U.S.C. § 3604. Kudawoo contends that Sandy Hill denied her housing or made housing unavailable because of her gender, discriminated in the terms and conditions of the rental agreement based on her gender, and made statements indicating a preference or limitation based on gender. These claims are also analyzed under McDonnell Douglas. See Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003). As with the § 1981 claim, Kudawoo's fair housing claim fails because she has no evidence that she was treated differently from

---

[4] Even if Kudawoo had made a prima facie showing of discrimination, Sandy Hill has a legitimate, nondiscriminatory reason for the eviction: because Kudawoo screamed at and assaulted another tenant, necessitating police intervention. See Hall v. Meadowood Ltd. P'ship, 7 F. App'x 687, 690 (9th Cir. 2001) (finding that a tenant's rude and disruptive behavior constituted a legitimate, nondiscriminatory reason for eviction). Kudawoo has not demonstrated that Sandy Hill's explanation was false, and thus, she has not shown that its proffered reason was a pretext for discrimination.

similarly situated males. In particular, she has not shown that Sandy Hill treated her differently from male tenants who screamed at and assaulted another tenant, causing the other tenant to call the police. Consequently, Kudawoo has not met her prima facie burden.[5] Sandy Hill is entitled to summary judgment on the § 3604 claim.

Turning to Kudawoo's remaining fair housing claim, § 3617 prohibits retaliation for a person's exercise of rights under the Act.

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617. Again, the McDonnell-Douglas framework applies. In a retaliation context, Kudawoo must show that (1) she engaged in a protected activity; (2) Sandy Hill subjected her to an adverse action; and (3) a causal link exists between the two. See Walker v. City of Lakewood, 272 F.3d 1114 (9th Cir. 2001). Kudawoo's alleged protected activities are that she complained about noise from her neighbors and cooked African food. Neither of these activities are rights guaranteed by the Fair Housing Act. In addition, Kudawoo has no evidence of a causal link between the activities and the eviction. She offers only her self-serving speculation that she was evicted because of her noise complaints and cooking. The only occasion on which Kudawoo exercised a right under the Act was when she answered the Complaint in this matter, but this occurred five months after the eviction, and thus, there

---

[5] Even if she had, however, Sandy Hill has a legitimate, nondiscriminatory reason for the eviction, and Kudawoo has no evidence of pretext, as previously discussed.

is no causal link between the protected activity and the adverse action. Sandy Hill is entitled to summary judgment as a matter of law on the fair housing retaliation claim.[6]

**E.   State Law Claims**

    1.    <u>Breach of Landlord Covenants under Minn. Stat. § 504B.161</u>

Kudawoo submits that Sandy Hill violated Minn. Stat. § 504B.161 by failing to prevent disturbances and disruptive activity in the apartment building. However, this statute simply requires a landlord to keep leased residential premises in reasonable repair, fit for intended use, and maintained in accordance with health and safety laws. <u>See</u> Minn. Stat. § 504B.161; <u>Meyer v. Parkin</u>, 350 N.W.2d 435, 438 (Minn. Ct. App. 1984). Kudawoo has not cited any authority supporting her position that a property manager's failure to prevent disturbances and disruptive activity breaches the statutory covenants of habitability. Moreover, even if such authority existed, Kudawoo's evidence of disturbances and disruptive conduct would not withstand summary judgment because the record reveals no more than commonplace squabbling between neighbors. The most egregious disruptive incident in the record resulted from Kudawoo's own behavior. Sandy Hill is granted summary judgment on this claim.

    2.    <u>Violation of Kudawoo's Right to Seek Emergency and Police Assistance under Minn. Stat. § 504B.205</u>

---

[6] Even if Kudawoo had fashioned a prima facie case, however, Sandy Hill has offered a legitimate, nondiscriminatory reason for the eviction, and there is no proof of pretext.

Kudawoo avers that Sandy Hill violated her right to seek emergency and police assistance under Minn. Stat. § 504B.205.  Under this measure, a landlord may not stop a tenant from calling for police or emergency assistance in response to domestic abuse, or penalize a tenant for doing so.  Id., subd. 2.  However, Kudawoo is the person who assaulted another tenant, and the other tenant called the police because of Kudawoo's conduct.  There is no evidence that Kudawoo called the police or even attempted to do so.  Accordingly, summary judgment is awarded to Sandy Hill on this claim.

3.   Violation of Kudawoo's Right to Privacy as a Residential Tenant under Minn. Stat. § 504B.211

Kudawoo accuses Sandy Hill of failing to address noise problems caused by other tenants, citing Minn. Stat. § 504B.211.  This statute precludes landlords from entering a residential unit without notifying the tenant and having a reasonable business purpose.  Id., subd. 2.  Failing to prevent noise does not constitute unlawful entry and invasion of privacy as contemplated by § 504B.211, and Sandy Hill is entitled to summary judgment on this point.

> 4. <u>Failure To Return a Security Deposit under Minn. Stat. § 504B.178</u>

Kudawoo alleges that Sandy Hill did not return her security deposit, in violation of Minn. Stat. § 504B.178. This statute requires a landlord to inform a tenant in writing of the reason for withholding a deposit, within three weeks after the tenancy ends. <u>Id.</u>, subd. 3(a). A landlord may withhold the deposit to remedy unpaid rent. <u>Id.</u>, subd. 3(b). The record in this case conclusively shows that Sandy Hill fully complied with the law in retaining the deposit. The lease between the parties provided that if Sandy Hill evicted Kudawoo for violating a term of the lease, Kudawoo would remain fully obligated to pay rent until the end of the lease term or until the unit was re-let. Less than three weeks after Kudawoo was evicted, Sandy Hill advised her in a letter that she was responsible for the past due rent. Sandy Hill also sent a follow-up letter. In a third letter, Sandy Hill told Kudawoo that she had forfeited her deposit, and that it would apply the deposit to the amount due for rent and attorneys' fees. Kudawoo has no cause of action under § 504B.178, and the Court grants summary judgment to Sandy Hill.

> 5. <u>Failure to Comply with the Eviction Requirements Set Forth in Minn. Stat. § 504B.321.</u>

Kudawoo submits that Sandy Hill did not comply with the statutory requirements for eviction set forth in Minn. Stat. § 504B.321. Specifically, she accuses Sandy Hill of not giving her formal notice of its intention to evict her and affording her an opportunity to respond. Section 504B.321 details the necessary procedures for a landlord to bring an eviction action in state court. As Sandy Hill points out, however, it never initiated an

eviction action, and therefore the statute was never implicated. The lease between the parties provided that if Kudawoo violated a provision of the lease, Sandy Hill could evict her immediately. After Kudawoo assaulted another tenant, Sandy Hill told her to vacate the apartment within thirty days. Kudawoo moved out before the thirty-day period expired. Thus, Sandy Hill never had to resort to bringing an action for eviction under § 504B.321. The Court grants summary judgment to Sandy Hill on this claim.

**CONCLUSION**

There are no genuine issues of material fact, and Sandy Hill is entitled to summary judgment on all of Kudawoo's counterclaims. Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Sandy Hill's Motion for Summary Judgment (Docket No. 15) is **GRANTED**;

2. Kudawoo's counterclaims are **DISMISSED with prejudice**; and

3. This case is **DISMISSED with prejudice**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  October 16, 2006

                                          s/ Paul A. Magnuson
                                          Paul A. Magnuson
                                          United States District Court Judge